**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GENERAL PRODUCE DISTRIBUTORS, INC., | ) |
| DAVID MINTJAL and THERESE MINTJAL, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 08 C 5681 |
| | ) |
| PROFESSIONAL BENEFIT TRUST MULTIPLE | ) Judge Nan R. Nolan |
| EMPLOYER WELFARE BENEFIT PLAN & | ) |
| TRUST, PBT ADMINISTRATION, LLC, | ) |
| PROFESSIONAL BENEFIT TRUST, LTD. | ) |
| and TRACY SUNDERLAGE, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff General Produce Distributors, Inc. ("General Produce") was a participating employer in the Professional Benefit Trust Multiple Employer Welfare Benefit Plan & Trust (the "PBT Trust"), a multiple employer welfare plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiffs David Mintjal and Therese Mintjal are employees of General Produce and were the company's only two participants in the PBT Trust. Plaintiffs have filed suit against the PBT Trust; the Trust's contract administrator, PBT Administration LLC; the Trust's trustee, Professional Benefit Trust, Ltd. ("PBT Ltd."); and the Managing Member of PBT Administration, Tracy L. Sunderlage, alleging breach of fiduciary duty, deprivation of benefits and failure to produce requested documents in connection with the PBT Trust. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Defendants now move to dismiss all of Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim. For the reasons set forth here, the motion is granted in part and denied in part.

## BACKGROUND[1]

The PBT Trust provided "death benefits and living benefits" to employees of participating employers. (Cmplt. ¶ 8.) General Produce started participating in the PBT Trust in 1995 and made annual contributions on behalf of the Mintjals. The Mintjals' benefits were funded by four whole life insurance policies issued by Amerus Life Insurance Company, and owned by the PBT Trust. (*Id.* ¶¶ 8, 9.)

Beginning in or about 2005, Defendants decided to terminate the PBT Trust. In that regard, Defendants implemented a termination plan "designed to permit the defendants to terminate the Trust without the defendants relinquishing control over the exclusive management of over $70,000,000.00 in trust assets together with the management fees and other financial benefits associated therewith." (*Id.* ¶ 23.) Specifically, Defendants set up an offshore captive insurance company called Maven Assurance Ltd. ("Maven") and, on or about July 31, 2006, transferred ownership of the $70 million in trust assets to this entity. Defendants also made the PBT Trust the death benefit beneficiary on all insurance policies, replacing the beneficiaries designated by each participant. Maven, in turn, established "protected premium accounts" for each employer participant of the PBT Trust, and credited each account with an amount equal to the employer's "beneficial interest." (*Id.* ¶¶ 26, 27, 29.) When the PBT Trust formally terminated on October 31, 2006, Plaintiffs' beneficial interest being held in General Produce's protected premium account was approximately $3,515,000. Under the terms of the Trust, Plaintiffs were entitled to a "termination distribution" totaling that amount. (*Id.* ¶¶ 30-32.)

Rather than take a termination distribution, the Mintjals followed Defendants' instruction to set up an annuity account with Acadia Life Limited in December 2006, and to use the annuity to purchase "unregistered, non voting stock" in Maven. Defendants also wanted Plaintiffs to

---

[1] In reviewing this motion to dismiss, the court accepts all well-pleaded factual allegations in the complaint. *Richards v. Kiernan*, 461 F.3d 880, 882 (7th Cir. 2006).

"authorize the defendants to transfer the plaintiffs' 'beneficial interest' in the protected premium account at Maven to a new [single employer] plan, which would be managed by the defendants." Plaintiffs, however, refused to join in the single employer plan, despite criticism and pressure from Defendants. (*Id.* ¶¶ 33-35.)

Eventually, Plaintiffs demanded that Maven place their money back in the Acadia annuity account. On June 15, 2007, Maven transferred $1,072,744.97 in cash, plus "a piece of paper purporting to be an assignment of shares in an entity described as 'Concord Capital SPC.'" The Concord Capital note was reportedly worth another $1.7 million, but Plaintiffs claim that it was "virtually worthless." (*Id.* ¶¶ 36-39, 41, 43.) According to Plaintiffs, the Concord Capital note is an example of certain imprudent investments Defendants made in 2004. (*Id.* ¶ 42.) Specifically, Defendants spent approximately $9,335,132 on investment products they described as Guaranteed Investment Contracts ("GICs"), which pay an annual interest rate on the face amount; return the investor's principal at the end of the term; and provide a guarantee by the issuing company. (*Id.* ¶ 14.) In fact, Defendants had purchased Collateralized Debt Obligations ("CDOs"), "extremely complex investment products . . . subject to significant risks of illiquidity and default due to their structure and the nature of the underlying assets funding the CDO." (*Id.* ¶¶ 16, 17.)

On June 8, 2008, Plaintiffs requested information and plan documents from Defendants pursuant to ERISA § 502(c)(2). (*Id.* Count III ¶ 14.) Defendants refused, and several months later on October 6, 2008, Plaintiffs filed the instant lawsuit. Plaintiffs charge Defendants with violating their fiduciary duties (Count I), wrongfully depriving Plaintiffs of benefits (Count II), and failing to produce documents (Count III). Defendants have moved to dismiss all three Counts for lack of subject matter jurisdiction and failure to state a claim.

**DISCUSSION**

The purpose of a motion to dismiss is to test the sufficiency of plaintiffs' complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A motion to dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Defendants are seeking dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). With respect to Rule 12(b)(1), Defendants raise "a facial attack that the allegations of jurisdiction in the pleadings are facially insufficient to demonstrate the existence of jurisdiction." *Berg v. BCS Financial Corp.*, 372 F. Supp. 2d 1080, 1088 (N.D. Ill. 2005) (internal quotations omitted). Thus, the standard of review is similar to the one applied on a Rule 12(b)(6) motion for failure to state a claim. *Id.* That is, the court accepts as true all factual allegations in the plaintiffs' complaint and draws all reasonable inferences in their favor. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 770 (7th Cir. 2002).

**A.    Subject Matter Jurisdiction**

Defendants argue that Plaintiffs' complaint must be dismissed for lack of subject matter jurisdiction because they have no standing to sue under ERISA § 502(a) or Article III of the U.S. Constitution. The court considers each argument in turn.

**1.    Standing under ERISA**

Under ERISA, only plan participants or beneficiaries can bring claims against a plan for benefits under § 502(a). 29 U.S.C. § 1132(a); *Kamler v. H/N Telecommunication Servs., Inc.*, 305 F.3d 672, 678 (7th Cir. 2002). A "participant" is someone who either is currently covered under a welfare plan or has "a colorable claim to vested benefits." *Kamler*, 305 F.3d at 678 (citing 29 U.S.C. § 1002(7) and *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989)). A "beneficiary" is "a person designated by a participant . . . who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Defendants argue that Plaintiffs are neither participants nor beneficiaries

4

because (1) they do not seek to recover any benefits; and (2) ERISA ceased to apply once the PBT Trust terminated, leaving Plaintiffs with only state-contract remedies.

As a preliminary matter, the court notes that Plaintiffs have failed to respond to Defendants' argument that General Produce has no standing to sue under § 502(a) because it is an employer, and not a participant or beneficiary of the PBT Trust. This argument is well-taken. *APCO Willamette Corp. v. P.I.T.W.U. Health and Welfare Fund*, 390 F. Supp. 2d 696, 699 (N.D. Ill. 2005) (employers have no standing to sue under § 502(a) of ERISA). Plaintiffs' conclusory assertion that General Produce is an "Employer participant" is insufficient to establish that it has standing to sue in this case. *See, e.g., Chavez v. Illinois State Police*, No. 94 C 5307, 1999 WL 592187, at *3 (N.D. Ill. Aug. 2, 1999) ("To the extent the allegations in the complaint directed at the plaintiffs' standing are conclusory . . . the court may disregard them.") The motion to dismiss General Produce is therefore granted.

### a.      Colorable Claim to Vested Benefits

With respect to the Mintjals, who are not currently covered under the PBT Trust, standing turns on whether they have a colorable claim to vested benefits. *Kamler*, 305 F.3d at 678. Defendants argue that they do not because Plaintiffs purportedly "made no claim for benefits during the life of the Trust [and] make no claim to any such benefits in their Complaint." (Def. Mem., at 7.) Defendants note that ERISA does not create a right to employer-provided welfare benefits, and that any such benefits are vested only if the plan contract so provides. *Barnett v. Ameren Corp.*, 436 F.3d 830, 832 (7th Cir. 2006); *Bland v. Fiatallis North America, Inc.*, 401 F.3d 779, 783 (7th Cir. 2005); *Frahm v. Equitable Life Assur. Soc.*, No. 93 C 81, 1995 WL 579282, at *5 (N.D. Ill. Sept. 29, 1995) ("[W]hether welfare benefits have vested is an issue of contract interpretation.") Indeed, employers or plan sponsors are "generally free under ERISA, for any reason at any time, to . . . modify, or terminate" any welfare plan, even if it results in a deprivation of benefits. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). Defendants argue that the PBT Trust neither

5

provided for vested benefits nor created any continuing right to welfare benefits sufficient to give Plaintiffs standing to sue.

Plaintiffs barely address this argument, claiming that for purposes of a motion to dismiss, the allegations that they hold participant and/or beneficiary status must be taken as true. (Pl. Resp., at 5.) This is an oversimplification, but the Seventh Circuit has held that "the requirements for a colorable claim are not stringent; a plaintiff need have only a nonfrivolous claim for the benefit in question." *Kamler*, 305 F.3d at 678. *See also Baker v. Kingsley*, No. 03 C 1750, 2007 WL 1597654, at *2 (N.D. Ill. May 31, 2007) (noting the Seventh Circuit's broad interpretation of the phrase "vested benefits" as used in the Supreme Court's *Bruch* decision).

Here, Plaintiffs allege, among other things, that Defendants mismanaged the PBT Trust by purchasing risky CDOs; imprudently and improperly terminated the Trust by transferring ownership of the $70 million in trust assets to Maven; and deprived Plaintiffs and others of the full value of their beneficial interest in the Trust. This meets the low threshold for a "colorable" claim for breach of fiduciary duty under ERISA. 29 U.S.C. §§ 1109, 1132(a); *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791 (7th Cir. 1996) ("[S]tanding is available to any former employee who has a colorable claim to benefits which the employer promised to provide pursuant to the employment relationship and which a non-frivolous argument suggests have accrued to the employee's benefit."); *Brieger v. Tellabs, Inc.*, 473 F. Supp. 2d 878, 887 (N.D. Ill. 2007) (plaintiffs had "a colorable claim to lost benefits based on defendants' alleged breaches of fiduciary duty" and thus had standing to sue under ERISA).

The next question is whether this colorable claim is for vested benefits. Plaintiffs seek to recover the full value of their termination distribution, and suggest that the distribution may have been larger but for the fact that Defendants favored some Trust participants over others when terminating the Trust. (Cmplt. ¶¶ 44, 46.) Defendants argue that the termination distribution is not a "benefit" under ERISA or the terms of the Trust. (Def. Mem., at 7.) This is a matter of contract

6

interpretation, but the parties dispute the proper plan document at issue. *Frahm*, 1995 WL 579282, at *5. Defendants claim the Fifth Amended and Restated Multiple Employer Welfare Benefit Plan and Trust ("Fifth Plan") governs this case; Plaintiffs "are not prepared at this time to stipulate to that issue due to the inability to verify its authenticity and applicability." (Pl. Resp., at 2.) Regardless, the Fifth Plan cited by Defendants states that in the event of termination, the Trustee "shall instruct the Contract Administrator to issue Termination Distributions to the Participating Employees." (Ex. A, § 13.3(b), at 45.) This suffices to allege a claim for benefits. *See Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007) (a plan participant may sue for "relief to which the plan documents themselves entitle the participant."); *Medina v. Time Ins. Co.*, 3 F. Supp. 2d 996, 1000 (S.D. Ind. 1998) ("[C]ourts have generally rejected attempts by welfare benefit plan sponsors or insurers to apply changes *retroactively* so as to deny benefits that had already vested.")

Defendants also reiterate that the Trust was fully funded upon termination. As noted, however, Plaintiffs suggest that their beneficial interest in the Trust would have been larger but for Defendants' fiduciary breaches. (Cmplt. ¶¶ 44, 46.) This, too, is fairly characterized as a claim for vested benefits. *See, e.g., Harzewski*, 489 F.3d at 807 (former employees have claims for vested benefits if they allege that "had it not been for the trustees' breach of their fiduciary duty [they] would have been entitled to greater benefits than [they] received.")

### b. Termination of the PBT Trust

Defendants insist that standing is still lacking in this case, arguing that "the termination of the PBT Trust signals the end of ERISA's application to the matter entirely." (Def. Mem., at 8.) In support of this theory, Defendants cite *Beck v. Pace Int'l Union*, 551 U.S. 96 (2007), in which the Supreme Court held that the sponsor and administrator of a single-employer defined-benefit pension plan did not breach its fiduciary obligations under ERISA by terminating the plan through the purchase of annuities rather than considering a merger with a multiemployer plan. *Id.* at 98. Defendants focus on the following language from the Court:

> [T]erminating a plan through purchase of annuities (like terminating through distribution of lump-sum payments) formally severs the applicability of ERISA to plan assets and employer obligations. Upon purchasing annuities, the employer is no longer subject to ERISA's multitudinous requirements . . . . The assets of the plan are wholly removed from the ERISA system, and plan participants and beneficiaries must rely primarily (if not exclusively) on state-contract remedies if they do not receive proper payments or are otherwise denied access to their funds.

*Id.* at 106. Under *Beck*, Defendants argue, "Plaintiffs' claim (if one exists at all) falls outside the scope of ERISA." (Def. Mem., at 8.)

Plaintiffs respond that the single-employer defined-benefit pension plan at issue in *Beck* has no bearing on multiemployer welfare trusts such as the PBT Trust. Plaintiffs focus instead on cases stating that the termination of a plan does not preclude subsequent claims for breach of fiduciary duty. In *Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund*, 933 F. Supp. 1124 (D. Mass. 1996), for example, the court disagreed that plan trustees were insulated from a damages suit for breach of fiduciary duty where the plan at issue had been terminated. *Id.* at 1136. The court noted that "ERISA is a remedial statute designed to fashion anodynes that protect the interests of plan participants and beneficiaries." *Id.* (quoting *Degnan v. Publicker Indus., Inc.*, 83 F.3d 27, 30 (1st Cir. 1996)). In the court's view, the trustees' "crabbed interpretation" of ERISA's standing and fiduciary provisions "would leave plan beneficiaries . . . remediless in the face of the most aggravated breaches of fiduciary duty that cause a plan to fail." *Id.* at 1137. *See also Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1409-10 (9th Cir. 1988) (plan participants and beneficiaries had standing to seek a constructive trust remedy for breach of fiduciary duty even after they had received their actuarially vested plan benefits).

To the extent *Beck* involved neither a multiemployer welfare plan nor a question of standing, the court declines to apply the language cited by Defendants to defeat standing in this case. *Beck* in no way suggests that plan administrators who breach fiduciary duties during the life of a plan are somehow immunized from liability once the plan terminates. Indeed, such a conclusion would be contrary to ERISA's remedial objectives. *See Varity Corp. v. Howe*, 516 U.S. 513, 513 (1996) ("[I]t

8

is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy."); *Pfahler v. National Latex Prods. Co.*, 517 F.3d 816, 827-28 (6th Cir. 2007) ("[P]ermitting beneficiaries to bring suit to remedy fiduciary breaches even after a plan is defunct effectuates ERISA's underlying goals.")

Defendants attempt to avoid this result by focusing on the fact that "an employer's decision *whether* to terminate an ERISA plan is a settlor function immune from ERISA's fiduciary obligations." *Beck*, 551 U.S. at 101 (emphasis in original). The court agrees, but Plaintiffs have clarified in their responsive memorandum that they seek to redress a breach of fiduciary duty related to the manner in which Defendants terminated the PBT Trust, and not the termination decision itself. (Pl. Resp., at 7.) Specifically, Plaintiffs allege that Defendants deliberately disadvantaged and deceived them not only with respect to the purchase of the CDOs, but also with respect to the establishment of Maven. The court agrees with Plaintiffs that participants of a terminated plan have standing to sue for such fiduciary misconduct. *See, e.g., Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 640 (7th Cir. 2004) ("[A] breach of fiduciary duty exists if fiduciaries 'mislead plan participants or misrepresent the terms or administration of a plan.'"); *Calobrace v. American Nat'l Can Co.*, No. 93 C 999, 1995 WL 557443, at *5 (N.D. Ill. Sept. 19, 1995) (participants in terminated plan had standing to allege that fiduciary breaches had diminished the value of their distribution).

In a final effort to defeat ERISA standing, Defendants claim that "Plaintiffs admit that their protected premium account at Maven was funded with over $3.5 million, an amount equal to their beneficial interest in the PBT Trust at its termination." (Def. Reply, at 9.) According to Defendants, it was only "at some unspecified point in time after the termination of the PBT Trust, after the Maven transaction, and after [Plaintiffs'] decision to discontinue benefits with Maven" that "the value of some portion of their assets in the Acadia Annuity decreased." (*Id.* at 9-10.) As a result,

Defendants argue, Plaintiffs have no claim for breach of fiduciary duty as it relates to the manner in which Defendants terminated the PBT Trust.

Defendants' objections are more appropriately viewed as an attack on the merits, and not a problem with standing. As the Seventh Circuit has stated, "[e]xcept in extreme cases . . . , the question whether an ERISA plaintiff is a 'participant' entitled to recover benefits under the Act should be treated as a question of statutory interpretation fundamental to the merits of the suit rather than as a question of the plaintiff's right to bring the suit." *Harzewski*, 489 F.3d at 803-04. *See also Construction Industry Retirement Fund of Rockford, Illinois v. Kasper Trucking, Inc.*, 10 F.3d 465, 467 (7th Cir. 1993) ("[A] litigant doomed to lose does not for that reason lack standing to sue.")

### 2.    Article III Standing

Defendants fare no better in their attempt to dismiss the complaint for lack of Article III standing. In the court's view, Plaintiffs "have standing to sue in the sense of being entitled to ask for an exercise of the judicial power of the United States as that term in Article III of the Constitution has been interpreted, because if they win they will obtain a tangible benefit." *Harzewski*, 489 F.3d at 803. Defendants in essence are arguing again that Plaintiffs have no basis for recovery under ERISA. Indeed, Defendants' supporting arguments are the same as those relating to the merits of the case. (Def. Mem., at 9.) The court thus turns to Defendants' motion under Rule 12(b)(6).

### B.    Sufficiency of the Pleadings

Defendants contend that Plaintiffs have not stated any claims for relief sufficient to survive a motion to dismiss. In Defendants' view, Plaintiffs have not pleaded any breach of fiduciary duty; seek individual damages not allowed under ERISA; have no claim to any benefits; and are not entitled to the documents requested. The court considers each argument in turn.

### 1.    Breach of Fiduciary Duty

Under ERISA, a fiduciary must "discharge his interests with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). As noted, "[f]iduciaries breach this duty 'if they mislead plan participants or misrepresent the terms or administration of a plan.'" *Kamler*, 305 F.3d at 681 (quoting *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993)). Though "[n]ot all errors in communicating information regarding a plan violate a fiduciary's duty under ERISA, . . . 'material facts affecting the interests of plan participants or beneficiaries' must be disclosed." *Id.* (quoting *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 590 (7th Cir. 2000)).

Defendants argue that most of Plaintiffs' allegations of wrongful conduct in Count I of the complaint are conclusory and wholly lacking in information sufficient to state claims. (Def. Mem., at 9.) The court agrees that some of Plaintiffs' allegations are somewhat terse. Nevertheless, "claims of breach of fiduciary duty under ERISA are subject to no pleading standard more stringent than Rule 8 of the Federal Rules of Civil Procedure, which requires a plaintiff to present only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Abbott v. Lockheed Martin Corp.*, No. 06-CV-0701-MJR, 2009 WL 839099, at *4 (S.D. Ill. Mar. 31, 2009) (internal quotations omitted). Defendants have not articulated a sufficient basis for dismissing any allegation other than the three specific ones discussed below. Accordingly, the court declines to dismiss Count I generally as an improper "scattershot" approach to pleading, and focuses instead on Defendants' more developed arguments. *See Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008) ("On a motion to dismiss, defendants have the burden of demonstrating the legal insufficiency of the complaint - not the plaintiffs or the court.")

Defendants focus on three main fiduciary breaches alleged in the complaint: (1) execution of the termination plan; (2) imprudent investment in CDOs; and (3) payment of an administrative fee to PBT Administration. (Def. Mem., at 9.) With respect to the first two issues, Defendants argue that neither the termination of the PBT Trust nor the purchase of the CDOs gives rise to a breach

11

of fiduciary duty claim because the Trust was fully funded at the time of termination. Defendants contend that the alleged problems with the CDOs, which caused the value of Plaintiffs' beneficial interest to decrease, began only at some point after the termination of the Trust, after the transfer of assets to Maven, and after Plaintiffs decided to withdraw their assets. (*Id.*)

Plaintiffs do allege that Defendants transferred $70 million in Trust assets to Maven, and that the value of their beneficial interest at that time was $3,515,000. (Cmplt. ¶¶ 27, 32.) The court does not view this, however, as a concession that the Trust was fully funded upon termination. Rather, Plaintiffs also allege that Defendants falsely reported that they were purchasing secure GICs when, in fact, they were purchasing risky CDOs; the Trust sustained damages in excess of $12 million as a result of those purchases; Defendants used Trust assets for personal loans; and Defendants improperly established Maven in order to retain control of the Trust assets. (*Id.* ¶¶ 48, 50.) These allegations give rise to a claim for breach of fiduciary duty, including failure to protect Trust assets. *See Vallone*, 375 F.3d at 640-41 ("[F]iduciaries must communicate material facts affecting the interests of plan participants or beneficiaries."); *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 471 (7th Cir. 1997) (quoting 29 U.S.C. § 1104(a)(1)(B)) (ERISA fiduciaries must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.")

Defendants claim that *Harley v. Minnesota Mining & Mfg. Co.*, 284 F.3d 901 (8th Cir. 2002), mandates a finding of no breach of fiduciary duty because the plan had sufficient funds to pay promised benefits when Defendants established Maven, and the Trust was defunct by the time any losses occurred. (Def. Mem., at 10.) *Harley* involved a defined benefit plan as discussed in *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999). Specifically, members of a single-employer defined benefit plan have a nonforfeitable right to a certain defined level of benefits known as "accrued benefits." They have no entitlement to share in a plan's surplus because the employer

12

bears the entire investment risk – i.e., the employer must pay out accrued benefits even if there is a shortfall due to bad investments. *Hughes Aircraft*, 525 U.S. at 439-41. In *Harley*, the plan's $20 million investment in Granite Corporation became worthless after the company declared bankruptcy. 284 F.3d at 905. The court held that the plaintiffs could not sue to recover on behalf of the plan because the plan's surplus was sufficiently large to cover the plaintiffs' accrued benefits, even without the Granite investment. *Id.* at 906-07.

The court does not find *Harley* particularly helpful in the context of this case, which does not involve a single-employer defined benefit plan. Plaintiffs allege that there were insufficient funds to cover their $3,515,000 interest in the plan, as evidenced by the fact that approximately half of their funds were paid in the form of a worthless note. They further allege that other participants "have also been deprived of their beneficial interests in the Trust." (Cmplt. ¶¶ 44, 45.) For purposes of a motion to dismiss, Plaintiffs have alleged sufficiently that Defendants breached their fiduciary duty by purchasing risky CDOs, using Maven as an instrument to terminate the PBT Trust, and failing to act solely in the interest of Trust participants and beneficiaries.

With respect to the payment of fees to PBT Administration, Defendants note that the plan itself entitled the plan administrator, upon resignation, to "a fee of 2% per year of service rendered, not to exceed 30% of the value of the assets in the Surplus Account." (Def. Mem., at 11.) Assuming this is true, Plaintiffs still have stated a claim for fiduciary breach in that Defendants allegedly paid themselves the administrative fee before paying out benefits due to the participants, and failed to disclose the method of calculating the fee. (Cmplt. ¶¶ 28, 48(g).) Defendants' motion to dismiss Count I for failure to state a claim for breach of fiduciary duty is denied.

### 2.    Damages

Defendants argue that Count I must nonetheless be dismissed because Plaintiffs are seeking only individual damages which are not available under ERISA §§ 502(a)(2) or 502(a)(3).

Section 502(a)(2) allows plan participants and beneficiaries to bring a civil action for appropriate relief under section 409 (entitled "Liability for Breach of Fiduciary Duty.") 29 U.S.C. § 1132(a)(2). Section 502(a)(3) allows plan participants and beneficiaries to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Defendants claim that in Count I, Plaintiffs are seeking compensation for their personal damages, which is not permitted by either section.

Before addressing these arguments, the court first notes that in Count II of the complaint, Plaintiffs invoke § 502(a)(1)(B) in seeking to recover benefits owed to them under the plan. 29 U.S.C. § 1132(a)(1)(B). If Plaintiffs in fact have a claim available to them under this section, then they cannot also pursue a claim under § 502(a)(3). *LaRue v. DeWolff, Boberg & Assocs.*, 128 S. Ct. 1020, 1026 (2008) ("Relief is not 'appropriate' under § 502(a)(3) if another provision, such as § 502(a)(1)(B), offers an adequate remedy."); *Powers v. Corn Prods. Int'l, Inc.*, 557 F. Supp. 2d 928, 933 (N.D. Ill. 2008) (dismissing claim under § 502(a)(3) where the plaintiff also sought relief under § 502(a)(1)(B)). Defendants, of course, insist that Plaintiffs have no basis for recovery under § 502(a)(1)(B). More importantly, in Plaintiffs' responsive memorandum, they agree with Defendants, stating that they "are no longer members of the plan and therefore there is no likelihood of recovery under 502(a)(1)(B), since the trust has been terminated and all the assets have been transferred to Maven." (Pl. Resp., at 13.) In light of this representation, Count II of the complaint is dismissed.

Turning back to Count I, Plaintiffs do not dispute that "[a]ny recovery under § 502(a)(2) for breach of fiduciary duty must go to the plan as a whole rather than to individual beneficiaries." *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 863 (7th Cir. 1997). Instead, they characterize their request for relief as a "compound remedial scheme" consisting of two parts. First, Plaintiffs seek "recovery on behalf of the Trust under 502(a)(2) for losses caused by the defendants' breaches of

14

fiduciary duty."[2]  (Pl. Resp., at 14.)  If Plaintiffs obtain damages under § 502(a)(2), then they next

seek "a constructive trust and restitution under 502(a)(3) for the 1.7 million they were deprived of

as their rightful share of the trust assets upon termination of the trust."  (*Id.*)

Defendants maintain that the Trust suffered no losses from the CDO investments as

required to recover under § 502(a)(2).  The court has already rejected this argument as a basis for

dismissal.  In addition, the complaint alleges general mismanagement of Trust assets, as well as

harm to all plan participants and beneficiaries.  (Cmplt. ¶¶ 45, 46, 48.)  This suffices to state a claim

on behalf of the Trust.  *See, e.g., LaRue*, 128 S. Ct. at 1025 (for defined contribution plans,

"[w]hether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries,

or only to persons tied to particular individual accounts, it creates the kind of harms that concerned

the draftsmen of § 409.")

With respect to the second part of the "remedial scheme," Plaintiffs claim that they are

entitled to the equitable remedies of restitution and constructive trust as set forth in *Varity Corp. v.*

*Howe*, 516 U.S. 489 (1996).  In *Varity*, a group of beneficiaries alleged that their employer (also the

plan administrator) tricked them into withdrawing from the company plan and transferring their

benefits to a new plan with a different employer.  When the new employer went into receivership,

the plaintiffs lost their welfare benefits and sued under ERISA § 502(a)(3).  *Id.* at 492-94.

The Supreme Court granted certiorari to resolve the proper interpretation of § 502(a)(3) as

it relates to awards of relief to individuals.  *Id.* at 495.  The Court held that "[t]he words of subsection

(3) - 'appropriate equitable relief' to 'redress' any 'act or practice which violates any provision of this

[subchapter]' - are broad enough to cover individual relief for breach of a fiduciary obligation."  *Id.*

---

[2]      The court notes that the PBT Trust is not a proper defendant with respect to the §
502(a)(2) claim because such suits must "be brought in a representative capacity on behalf of the
plan as a whole."  *Massachusetts Mut. Life. Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985).  The
Trust "cannot be named as a defendant in a suit in which it must be considered to be the plaintiff."
*Steinman v. Hicks*, 252 F. Supp. 2d 746, 756 (C.D. Ill. 2003).

at 510. In reaching this conclusion, the Court noted that the plaintiffs could not proceed under §§

502(a)(1) or 502(a)(2), and would have no remedy at all if they could not proceed under § 502(a)(3).

*Id*. at 515. The Court described subsection (a)(3) as a "catchall" provision that "act[s] as a safety

net, offering appropriate relief for injuries caused by violations that § 502 does not elsewhere

adequately remedy." *Id*. at 512. *See also Anweiler*, 3 F.3d at 993 ("[A]n individual may seek

equitable relief from a breach of fiduciary duty under section 1132(a)(3).")

      With this principle in mind, the court must determine whether Plaintiffs' request for relief is

fairly characterized as appropriate individual equitable relief under § 502(a)(3). A constructive trust

is an equitable remedy commonly sought and granted in cases of unjust enrichment. *See Wal-Mart*

*Stores, Inc. Associates' Health and Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000) ("[A]

suit to impose a constructive trust nestles comfortably within [the bounds of equity]."); *Clair v. Harris*

*Trust and Sav. Bank*, 190 F.3d 495, 498 (7th Cir. 1999). Restitution, on the other hand, "amounts

to a legal remedy in some circumstances and an equitable remedy in others." *Mondry v. American*

*Fam. Mut. Ins. Co.*, 557 F.3d 781, 806 (7th Cir. 2009). Whether restitution is legal or equitable in

a particular case depends on the nature of the relief sought. *Great-West Life & Annuity Ins. Co.*

*v. Knudson*, 534 U.S. 204, 215 (2002). The Supreme Court described the distinction as follows:

> [A] plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive
> trust or an equitable lien, where money or property identified as belonging in good
> conscience to the plaintiff could clearly be traced to particular funds or property in
> the defendant's possession. . . . A court of equity could then order a defendant to
> transfer title (in the case of a constructive trust) or to give a security interest (in the
> case of an equitable lien) to a plaintiff who was, in the eyes of equity, the true owner.
> But where "the property [sought to be recovered] or its proceeds have been
> dissipated so that no product remains, [the plaintiff's] claim is only that of a general
> creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien
> upon other property of the [defendant]." . . . . Thus, for restitution to lie in equity, the
> action generally must seek not to impose personal liability on the defendant, but to
> restore to the plaintiff particular funds or property in the defendant's possession.

*Id*. at 213-14 (internal citations omitted). *See also Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547

U.S. 356, 362 (2006). Restitution under § 502(a)(3) "may be in the form of monetary relief."

*Brosted v. Unum Life Ins. Co. of America*, 421 F.3d 459, 466 (7th Cir. 2005) (quoting *Health Cost Controls v. Skinner*, 44 F.3d 535, 537 n.5 (7th Cir. 1995)).

The court finds that Plaintiffs have adequately stated claims for recovery under §§ 502(a)(2) and 502(a)(3). Plaintiffs want Defendants to make good on the losses to the plan resulting from their fiduciary breach, and they seek a constructive trust and restitution for assets improperly transferred to Maven and/or paid to Defendants. Plaintiffs allege that the Defendants are in possession of the assets both in the form of the $2,163,000 fee that they took despite having inadequate assets to pay the participants, and through control over accounts at Maven. (Cmplt. ¶¶ 23, 24, 27, 48(g).) Defendants' motion to dismiss Count I is denied.

### 3. Documents

In Count III of the complaint, Plaintiffs seek to impose fines and penalties against PBT Administration and PBT Ltd. relating to their failure to respond to a request for documents and information. ERISA § 502(c) "requires plan administrators to provide information requested by plan participants or beneficiaries within 30 days of such request, or face a statutory fine." *Kamler*, 305 F.3d at 683 (citing 29 U.S.C. § 1132(c)). Plaintiffs allege that on June 20, 2008, they requested information from PBT Administration and PBT Ltd. but never received a response. Defendants again contend that once the PBT Trust terminated in 2006, Plaintiffs ceased to be participants or beneficiaries and, thus, had no right to request documents under ERISA. In support of this argument, Defendants cite *Maher v. Strachan Shipping Co.*, Civ. A. No. 92-2834, 1993 WL 441871 (E.D. La. Oct. 22, 1993), *rev'd on other grounds*, 68 F.3d 951 (5th Cir. 1994), in which the plaintiffs requested documents in 1992 relating to a plan that had terminated in 1987. *Id.* at *3. The court held that "the defendants' failure to provide documents to plaintiffs in 1992 did not violate ERISA's reporting and disclosure provisions" because the plaintiffs were no longer participants after 1987. *Id.*

The court is not persuaded that once a plan terminates, a plan administrator ceases to have any obligation under § 502(c) even with respect to individuals who are still considered to be "participants." Indeed, there is no indication that the plaintiffs in *Maher* held participant status. There is some appeal to Defendants' general concern that plan administrators should not be under "some ongoing, never ending requirement under ERISA [to] comply with document requests forever." (Def. Reply, at 14.) Nevertheless, Defendants have not cited any authority that helps resolve when that duty expires, or whether it applies to the participants in this case. *See, e.g., Weinreb v. Hospital for Joint Diseases Orthopaedic Inst.*, 285 F. Supp. 2d 382, 389 (S.D.N.Y. 2003) ("As the Plan administrator, the Hospital was required to provide Mrs. Weinreb with information in her capacity as the representative of a participant, notwithstanding the fact that the Plan was terminated by this point.") The court thus declines to dismiss Count III at this time.

## C.    Tracy Sunderlage

Defendants finally argue that Tracy Sunderlage must be dismissed because he is not an ERISA fiduciary. Under ERISA, a person is a plan fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). The Seventh Circuit has endorsed a "liberal standard for fiduciary status" that depends on "whether that person is a fiduciary with respect to the particular activity at issue." *Baker v. Kingsley*, 387 F.3d 649, 660, 663 (7th Cir. 2004). A fiduciary should be viewed "in functional terms of control and authority over the plan," and an alleged fiduciary's conduct must be viewed "vis-a-vis a plan's assets." *Ruiz v. Continental Cas. Co.*, 400 F.3d 986, 990 (7th Cir. 2005); *Central Illinois Carpenters Health & Welfare Trust Fund v. S & S Fashion Floors, Inc.*, 516 F. Supp. 2d 931, 934 (C.D. Ill. 2007).

Defendants claim that Mr. Sunderlage was not a contractual fiduciary under the PBT Trust, and argue that he must be dismissed as "merely an officer and employee of the named, contractual

fiduciaries." (Def. Mem., at 14.)  The court disagrees.  An individual not named as a fiduciary in a trust agreement may nonetheless be considered a fiduciary if he "exercised discretionary authority or control over the management of the Plans, the disposition of the Plans' assets, or the administration of the Plans."  *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009).  Here, Plaintiffs have alleged exactly that, stating that Mr. Sunderlage "exercised discretionary authority and control over the Trust and all plans, investments, and management of the Trust" and "was a fiduciary with respect to the Trust."  (Cmplt. ¶ 6.)

Defendants make much of the fact that Plaintiffs also allege that Mr. Sunderlage "was a 'defacto' plan sponsor, contract administrator, and trustee of the Trust," and that "PBT, Ltd. and PBT [Administration], were alter egos of Tracy Sunderlage." (*Id.*)  The court does not view these allegations as substantive claims in and of themselves and, thus, need not resolve whether Plaintiffs have alleged facts sufficient to pierce the corporate veil.  (Pl. Resp., at 15.)  Defendants' motion to dismiss Tracy Sunderlage is denied.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss [Doc. 27] is granted in part and denied in part.  Plaintiffs have until September 4, 2009 to file an amended complaint consistent with this opinion.  Status remains set for August 25, 2009 at 9:00 a.m.

ENTER:

Dated: August 7, 2009

_____

NAN R. NOLAN
United States Magistrate Judge