IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID MINTJAL and THERESE MINTJAL, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 08-cv-5681 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| PROFESSIONAL BENEFIT TRUST, MULTIPLE EMPLOYER WELFARE BENEFIT PLAN & TRUST, PBT ADMINISTRATION, LTD., TRACY SUNDERLAGE, LINDA SUNDERLAGE, MAVEN ASSURANCE, LTD., SUNDERLAGE RESOURCE GROUP, INC., and SRG INTERNATIONAL, INC., | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' motion to reconsider or revise [326] the Court's memorandum opinion and order of September 29, 2015 granting in part and denying in part Plaintiffs' motion for summary judgment [317]. For the reasons set forth below, the Court grants Plaintiffs' motion to reconsider [326].

I.  **Background**

Beginning in 1995, Plaintiffs' employer, General Produce Distributors, Inc., participated in the Professional Benefit Multiple Employer Welfare Benefit Plan & Trust ("the PBT Trust"), which provided death and living benefits to employees of participating employers. [311], Maven's Add'l Facts at 1-2. Plaintiffs David and Therese Mintjal were beneficiaries of the Trust between 1995 and 2006. *Id.* at 4. Defendant Professional Benefit Trust, Ltd. ("PBT Ltd.") was the trustee of the PBT Trust, *id.* at 3, Defendant PBT Administration, LLC ("PBT

Administration") was the administrator, and a company called Professional and Small Business Council Inc. was the trust sponsor. [281], Pls.' Mem. at 33. Tracy Sunderlage was the CEO and Chairman of the PBT Trust. See, *e.g.*, [274], Ex. 36. Plaintiffs further alleged that Linda Sunderlage, Tracy's wife and business partner, also was a fiduciary as she exercised discretionary authority and had control over the management of assets of the Trust. [145], SAC 7.

Prior to its termination, the PBT Trust was a multiple employer plan. The assets of the PBT Trust, including contributions by participating employers, were held in a single pool. [145], SAC 5. At the end of the year, each participating employer was designated a "beneficial interest" in the Trust based on the pro rata of its investment or contribution to the Trust. *Id.* at 6.

Plaintiffs moved for summary judgment as to various alleged breaches of fiduciary duties committed by Defendants. The alleged breaches occurred in connection with three major events: (1) the termination of the PBT Trust and General Produce's decision to no longer participate in a new single employer model with Maven, (2) certain loans that the PBT Trust made to a West Indies company called Dufferin Capital, Ltd. ("Dufferin") in 2002 and 2004, and (3) a $2.16 million administrative fee that Tracy Sunderlage awarded himself for administration of the PBT Trust. On September 29, 2015, the Court granted summary judgment in favor of Plaintiffs on (1) the Sunderlages' liability for breaches of their fiduciary duties with regard to the transactions with Maven, (2) Maven's liability as a party in interest in prohibited transactions with the named plan fiduciaries PBT Administration and PBT Ltd., (3) the termination of the PBT Trust, (4) the award of the $2,163,000 administrative fee when the PBT Trust was terminated, and (5) SRG Inc. and SRG International's liability for aiding and abetting the breaches of fiduciary duties by

Tracy Sunderlage. The Court denied Plaintiffs' motion as to the 2002 and 2004 Loans from the PBT Trust to Dufferin.

Invoking both Rules 54(b) and 59(e) of the Federal Rules of Civil Procedure Plaintiff now asks the Court to reconsider its summary judgment ruling, arguing that the Court erred when it determined that there was a genuine issue of material fact as to whether Linda Sunderlage was a fiduciary of the PBT Trust within the meaning of 29 U.S.C. §1002(21)(a) under the PBT Trust. and when the Court denied summary judgment on the claim that the 2002 and 2004 loans to Dufferin Capital were prohibited transactions under 29 U.S.C. § 1106. Defendants' responses were due on February 26, 2016, and replies were due March 11, 2016. Defendants failed to file a response, and presumably Plaintiffs stand on their opening brief in support of their motion to reconsider.

## II.     Legal Standard

In "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties," Rule 54(b) of the Federal Rules of Civil Procedure allows the Court to "revise[] at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Additionally, Rule 59(e) of Federal Civil Procedure allows a party to direct the court's attention to a "manifest error of law or fact or to newly discovered evidence." *United States v. Resnick,* 594 F.3d 562, 568 (7th Cir. 2010). Essentially, the rule allows "a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995).

A motion to reconsider asks a court to "reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was

3

overlooked." *Ahmed v. Ashcroft,* 388 F.3d 247, 249 (7th Cir. 2004) (internal quotation omitted); see also *Seng–Tiong Ho v. Taflove,* 648 F.3d 489 (7th Cir. 2011) (explaining that a court can amend its judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence) (citation omitted); *U.S. v. Ligas,* 549 F.3d 497, 501 (7th Cir. 2008). However, its purpose is not "to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless." *Frietsch v. Refco, Inc.,* 56 F.3d 825, 828 (7th Cir. 1995); see also *Oto v. Metropolitan Life Insurance Company,* 224 F.3d 601, 606 (7th Cir. 2000) ("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier."); *Divane v. Krull Electric Company,* 194 F.3d 845, 850 (7th Cir. 1999); *LB Credit Corporation v. Resolution Trust Corporation,* 49 F.3d 1263, 1267 (7th Cir. 1995). In regard to the manifest error prong, the Seventh Circuit has explained that a motion to reconsider is proper only when the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

### III. Analysis

#### A. Whether Linda Sunderlage Acted as a Fiduciary

Plaintiffs argue that the Court committed a manifest error of law when the Court failed to apply the appropriate clause of 29 U.S.C. § 1002(21)(a) in connection with its analysis of whether Linda Sunderlage acted as a "fiduciary" for the PBT Trust. In the Court's prior opinion [317], it concluded that there was a disputed issue of material fact in regard to whether Linda Sunderlage was a "fiduciary" within the meaning of ERISA because there was a lack of evidence

4

that she "had any discretionary authority or discretionary responsibility in the administration of the plan" as required by the first clause of 29 U.S.C. § 1002(21)(A)(1). 29 U.S.C. § 1002(21)(A)(1) reads as follows: "Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." Plaintiffs point out that the second clause of subsection (1) of 29 U.S.C. § 1002(21)(a) provides that a person who exercises "any" authority or control over the management or disposition of trust assets, including cash in the trust's bank accounts, is considered to be a "fiduciary" when exercising such authority or control, and no showing that the person had discretion over the assets is required.

In *Board of Trustees of Bricklayers v. Wettlin Assocs.*, 237 F.3d 270, 274 (3d. Cir. 2001), the Third Circuit pointed out that the adjective "discretionary," which is "so carefully selected for plan administration and management, is omitted in subsection (i) when dealing with authority or control over the management or disposition of plan 'assets." *Id.* Accordingly, the Third Circuit concluded that since "[t]he statute treats control over the cash differently from control over administration," discretionary responsibility over control of assets is not required for an individual to be deemed a fiduciary under 29 U.S.C. § 1002(21)(a). The Third Circuit added that such a reading squares with the Supreme Court's analysis in *Pegram v. Herdrich*, 530 U.S. 211, 231 (2000). "That Congress established a lower threshold for fiduciary status where control of assets is at stake is not surprising, given that '[a]t common law, fiduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries.'" *Wettlin Assocs.*, 237 F.3d at 274 (quoting *Pegram*, 530 U.S. at 231).

The Seventh Circuit adopted this analysis in *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905 (7th Cir. 2013). In *Leimkuler*, the Seventh Circuit explained,

> A number of our sister circuits have taken note of this distinction and concluded that discretionary control is not required with regard to the management or disposition of plan assets. See *Briscoe v. Fine*, 444 F.3d 478, 492–94 (6th Cir. 2006); *Chao v. Day*, 436 F.3d 234, 237–38 (D.C. Cir. 2006); *Coldesina v. Estate of Simper*, 407 F.3d 1126, 1132 (10th Cir. 2005); *Board of Trustees of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assoc., Inc.*, 237 F.3d 270, 273 (3d Cir. 2001); *Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1365 (11th Cir. 1997); *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997); *IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997); *FirsTier Bank, N.A. v. Zeller*, 16 F.3d 907, 911 (8th Cir. 1994). We agree with them that this reading is most faithful to the language of the statute, and we now make explicit that insofar as "management or disposition of assets" is concerned, there is no separate requirement of discretionary authority or control.

*Id.* at 913.

Seventh Circuit precedent thus makes clear that under the provisions of 29 U.S.C. § 1002(21)(A) relating to the management and disposition of assets, Linda Sunderlage was a "fiduciary" regardless of whether she had, or was exercising, any discretionary authority over disbursing funds from the PBT Trust's bank account. While the record lacks evidence that Linda Sunderlage had any discretionary authority or discretionary responsibility in the administration of the plan, the record does contain evidence that Linda Sunderlage transferred the 2004 loan from PBT Trust to Dufferin in April 2004. [277], Ex. 91. That document shows Linda Sunderlage's signature on behalf of PBT. *Id.* While a reasonable factfinder could conclude that such a document does not mean that Linda Sunderlage had *discretionary* authority or responsibility in the administration of the plan or its assets, see [294 (Sunderlages' Response at 11)], there is no dispute that she exercised control over the plan's assets. As the Seventh Circuit has explained, Linda Sunderlage's transfer of the 2004 loan from PBT Trust to Dufferin in April 2004 is enough for her to be considered a fiduciary under 29 U.S.C. §1002(21)(A). *Leimkuehler*,

6

713 F.3d at 913 ("The concept of discretion is thus integral to Plan management, but it is conspicuously missing when it comes to asset management or disposition.")

There is one more step in the analysis before the Court can conclude that Linda Sunderlage is a fiduciary. "Critically, Section 1002(21)(A) additionally states that an entity is a fiduciary only 'to the extent' it exercises its authority or control." *Leimkuehler*, 713 F.3d at 913. As the Supreme Court stressed in *Pegram,* "[i]n every case charging breach of ERISA fiduciary duty, [ ] the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint.*" *Id.* at 226 (emphasis added); see also *Leimkuehler*, 713 F.3d at 913, *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,* 474 F.3d 463, 471–72 (7th Cir. 2007) (ERISA plaintiff must show that entity "was acting in its capacity as a fiduciary at the time it took the actions that are the subject of the complaint").

Here, the record shows that during the relevant time period, Linda Sunderlage exercised control over the disposition of Trust assets when she disbursed funds from the PBT Trust's bank account in the amount of $1,339,787 as the cash portion of the $2,163,000 administrative fee claimed by PBT Administration LLC, a company owned and controlled by Tracy Sunderlage. See [280], Pls' Facts 811; see also [275], Ex. 69 at 131-137 (testimony of Jamie Stewart, the PBT Trust's Accountant). Tracy Sunderlage also confirmed that his wife wrote the check for the payment of the cash portion of the administrative fee from the PBT Trust bank account. See [272], Ex. 11 at 29-33, 257-259. Accordingly, Plaintiff's motion for reconsideration is well-taken, and the Court will modify its Memorandum Opinion and Order to reflect that there is no genuine issue of fact concerning Linda Sunderlage's liability under Count I of the Second

Amended Complaint [145] for breach of fiduciary duty for engaging in a prohibited transaction in violation of 29 U.S.C. § 1106.

B.  **Whether 2002 and 2004 Loans to Dufferin Capital**

Next, the Plaintiffs argue that the Court made a manifest error of fact in denying partial summary judgment on the claim that Tracy Sunderlage engaged in prohibited transactions in connection with the 2002 and 2004 loans to Dufferin Capital. 29 U.S.C. § 1106(a)(1)(B) prohibits loans between a fiduciary and a "party in interest." Tracy Sunderlage, as the managing director of Libera, entered into a Placement and Joint Venture Agreement between Libera and Dufferin pursuant to which Libera would provide consulting services to Dufferin in connection with certain transactions and collect a consulting fee equal to 50 percent of Dufferin's net profits. See [276], Ex. 72. The Trust made a second loan to Dufferin soon thereafter in the amount of $3,000,000 (the "2004 Loan"). [280], Pls.' Facts 6. Although Tracy Sunderlage had 50% ownership in Dufferin, the Court noted in its prior decision (1) that Plaintiffs could not point to evidence in the record demonstrating that the prohibited transaction took place, (2) that the Sunderlages pointed out that Placement and Joint Venture Agreement is not signed by Charles D'Angelo, listed as President of Dufferin, and (2) that Plaintiffs did not show that the 2004 Loan was in force because they pointed to yet another unsigned document. [275], Ex. 55. Because the Court could not find evidence in the record of the 2002 and 2004 transactions between the plan and Dufferin, the Court concluded that Plaintiffs had not carried their burden to merit summary judgment on that issue.

According to Plaintiffs, there is (and was) evidence in the record sufficient to support the granting of the motion for summary judgment in connection with the 2002 and 2004 loan transactions with Dufferin Capital. For the 2002 transaction, Plaintiffs point to Exhibit 54,

8

which they submitted as part of their summary judgment motion, which does include a note from Dufferin Capital detailing that PBT Trust transferred $4,417,966.00 to Dufferin on January 8, 2002. See [275], Ex. 54 at 2. Defendants admitted the loan amount of $4,417,966.00 and characterized it as a purchase, but that denial is patently contradicted by Exhibit 54. Furthermore, Exhibit 51, (which Plaintiffs failed to file electronically, but did file in their book of exhibits and serve on all parties) is a document, signed twice by Tracy Sunderlage on September 27, 2006, that acknowledges the dates and amounts of the 2002 and 2004 notes "issued by Dufferin Capital Ltd as maker and PBT [Trust] as lender." See [326], Ex. 1. Accordingly, there is sufficient evidence to conclude that the 2002 transaction was a prohibited transaction in violation of 29 U.S.C. § 1106.

With respect to the disputed 2004 transaction, Plaintiffs point to the fact that Tracy Sunderlage did not deny that $3,000,000.00 of Trust assets were disbursed to Dufferin Capirtal on May 21, 2004 for which Dufferin issued a $3,000,000 Note. Defendant Sunderlage's only objection to this claimed fact was the characterization of the transaction as a "loan" as opposed to an "investment." [294], Defs. Response to Pls.' Fact at 6. No factual materials were cited by Tracy Sunderlage in support of his response. While Sunderlage did object to an unsigned copy of the $3,000,000, *id.* at 9, the fact that the note is not signed does not negate the fact that there is evidence that the transaction occurred, including Sunderlage's admission that it did. The combination of Tracy Sunderlage's admission that the 2004 transaction with Dufferin occurred, the documentary evidence of Exhibit 51, and the unsigned document convince the Court that it did err in declining to enter summary judgment on Plaintiffs' claim that Tracy Sunderlage engaged in prohibited transactions in violation of 29 U.S.C. § 1106 when Defendants made the 2002 and 2004 loans to Dufferin Capital.

9

## IV. Conclusion

In sum, Plaintiff's motion to reconsider demonstrates that Linda Sunderlage was acting as a fiduciary when she transferred the 2004 loan from PBT Trust to Dufferin in April 2004 because she exercised control over the plan's assets. Accordingly, the Court committed a manifest error of law when it concluded that she was not a fiduciary under the plan and will revise its prior opinion to correct that error. In addition, Plaintiffs have convincingly pointed to evidence in the record, coupled with Defendants' inadequately-supported denials, establishing as a matter of law that the 2002 and 2004 transactions did occur. Considering that those transactions are prohibited under ERISA, the Court will revise its prior opinion to grant summary judgment for Plaintiffs on those two issues as well. Plaintiffs' motion to reconsider [326] therefore is granted in its entirety. This case is set for a status hearing on September 7, 2016 at 9:00 am.

Dated: August 26, 2016

_____
Robert M. Dow, Jr.
United States District Judge